IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

TERRI L. MARKS                                                               PLAINTIFF

                 v.                  Civil No. 2:11-cv-02192-JRM

MICHAEL J. ASTRUE, Commissioner of
Social Security Administration                                          DEFENDANT

**MEMORANDUM OPINION**

**I.**       **Factual and Procedural Background**

Plaintiff, Terri L. Marks, brings this action seeking judicial review, pursuant to 42 U.S.C. § 405(g), of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("the Act").

Plaintiff protectively filed her applications on April 30, 2010, alleging a disability onset date of April 23, 2008, due to depression, anxiety, multiple personality disorder, headaches, fatigue, and hypertension. Tr. 9, 138, 188. On the alleged onset date, Plaintiff was thirty-nine years old with an eleventh grade education. Tr. 24, 139, 152. She has past relevant work as a poultry line worker, industrial glove cleaner, and maid/housekeeper. Tr. 15.

Plaintiff's applications were denied at the initial and reconsideration levels. Tr. 62-67, 70-73. At Plaintiff's request, an administrative hearing was held on July 7, 2011. Tr. 20-54. Plaintiff was present at this hearing and represented by counsel. The ALJ rendered an unfavorable decision on August 4, 2011, finding Plaintiff was not disabled within the meaning of the Act. Tr. 6-19. Subsequently, the Appeals Council denied Plaintiff's Request for Review on September 8, 2011,

thus making the ALJ's decision the final decision of the Commissioner. Tr. 1-3. Plaintiff now seeks judicial review of that decision.

**II.     Applicable Law**

The Court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2003). "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might accept it as adequate to support a conclusion." *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002) (quoting *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001)). In determining whether evidence is substantial, the Court considers both evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Craig v. Apfel*, 212 F.3d 433, 435-36 (8th Cir. 2000) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). If, after conducting this review, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [Secretary's] findings," then the decision must be affirmed. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (quoting *Siemers v. Shalala*, 47 F.3d 299, 301 (8th Cir. 1995)).

To be eligible for disability insurance benefits, a claimant has the burden of establishing that she is unable to engage in any substantial gainful activity due to a medically determinable physical or mental impairment that has lasted, or can be expected to last, for no less than twelve months. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); 42 U.S.C. § 423(d)(1)(A). The Commissioner applies a five-step sequential evaluation process to all disability claims: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits her physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a disabling impairment listed in the

regulations; (4) whether the claimant has the RFC to perform her past relevant work; and (5) if the claimant cannot perform her past work, the burden of production then shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform given her age, education, and work experience.  *Pearsall*, 274 F.3d at 1217; 20 C.F.R. § 404.1520(a), 416.920(a).  If a claimant fails to meet the criteria at any step in the evaluation, the process ends and the claimant is deemed not disabled.  *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004).

### III.  ALJ's Determination

At step one, the ALJ determined Plaintiff had not engaged in substantial gainful activity at any point since April 23, 2008, the alleged onset date.  Tr. 11.  At step two, the ALJ found Plaintiff suffers from alcohol dependence, early remission, depressive disorder, not otherwise specified ("NOS"), cannabis abuse, rule out dependence, and avoidant and parasitic dependent personality features.  Tr. 11-12.  At step three, he determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment.  Tr. 12-13.

At step four, the ALJ determined Plaintiff could perform a full range of work at all exertional levels, but was limited to work in which interpersonal contact is incidental to the work performed, the complexity of tasks is learned and performed by rote with few variables and little judgment involved, the supervision is simple, direct, and concrete, and there is no contact with the general public.  Tr. 13-15.

After seeking vocational expert testimony, the ALJ found Plaintiff could perform her past relevant work as a poultry line worker.  Tr. 15, 49-50.  Accordingly, the ALJ determined Plaintiff was not under a disability from April 23, 2008, the alleged onset date, through August 4, 2011, the

date of the administrative decision. Tr. 16.

**IV. Discussion**

On appeal, Plaintiff contends the ALJ erred by: (A) finding her high blood pressure and headaches to be non-severe; (B) improperly determining her RFC; and (C) finding she could return to her past relevant work as a poultry line worker. *See* Pl.'s Br. 9-20. The Commissioner responds that substantial evidence supports the ALJ's determination. *See* Def.'s Br. 5-13. For the following reasons, the court finds that substantial evidence supports the ALJ's decision.

A. Severe Impairments

Substantial evidence supports the ALJ's determination that Plaintiff's hypertension and headaches were non-severe. Step two of the regulations involves a determination, based on the medical evidence, whether the claimant has an impairment or combination of impairments that is severe. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A severe impairment is one which significantly limits a claimant's physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007) (citing *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987)(O'Connor, J., concurring)). The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have "no more than a minimal impact on her ability to work." *Caviness v. Massanari,* 250 F.3d 603, 605 (8th Cir.2001) (citing *Nguyen v. Chater,* 75 F.3d 429, 430-31 (8th Cir.1996)). Although a claimant has the burden of establishing a severe impairment or impairments, the burden at this stage is not great. *Caviness*, 250 F.3d at 605.

The evidence of record does not support Plaintiff's contention that her hypertension and headaches significantly limit her work abilities. *Smith v. Shalala*, 987 F.2d 1371, 1374 (8th Cir. 1993) (citing *Matthews v. Bowen*, 879 F.2d 422, 425 (8th Cir. 1989)). Plaintiff was admitted to Sparks Regional Medical Center for hypertension on three occasions: June 11, 2010, August 5, 2010-August 9, 2010, and August 31, 2010-September 3, 2010. Tr. 215-452. On June 11, 2010, Plaintiff was treated for accelerated hypertension, alcohol withdrawal, and hypokalemia. Tr. 404-405. She was treated with hypertensive medication, which stabilized her blood pressure. Tr. 405. Upon discharge, Plaintiff was instructed to quit drinking and smoking and follow up with a family practice physician. Tr. 405.

On August 5, 2010, through August 9, 2010, Plaintiff was treated for uncontrolled hypertension, alcoholism, alcohol withdrawal, medical noncompliance, multiple personality disorder by history, hypokalemia, alcoholic hepatitis, and alcoholic pancreatitis. Tr. 305-308. Charles Jennings, M.D., noted that Plaintiff had been hospitalized in June 2010 for hypertension, alcohol withdrawal, and hypokalemia, but did not fill her prescriptions, attend Alcoholics Anonymous, or follow up with a family practice physician. Tr. 305, 403-405. Throughout the course of Plaintiff's hospitalization, her elevated liver enzymes resolved, her blood pressure improved, and she was discharged as stable. Tr. 306. Dr. Jennings instructed Plaintiff to abstain from alcohol, but opined that Plaintiff's long-term prognosis was very poor, as she did not appear to have definite plans to quit drinking. Tr. 306.

Plaintiff was admitted to Sparks from August 31, 2010, through September 3, 2010, for uncontrolled hypertension. Tr. 215-300. She was treated with IV fluids and placed back on her routine hypertensive medications, consisting of HCTZ, Metoprolol, Clonidine, and Norvasc. Tr.

219. On September 3, 2010, Plaintiff's blood pressure had improved and was controlled well enough for discharge. Tr. 219.

Although Plaintiff's hypertension was at times uncontrolled, this was largely due to her own noncompliance. Tr. 218-219, 406; *see Holley v. Massanari*, 253 F.3d 1088, 1092 (8th Cir. 2001) (noncompliance with medical treatment). Once she began taking her medication consistently, Plaintiff's blood pressure stabilized. Tr. 37; *Brown v. Astrue,* 611 F.3d 941, 955 (8th Cir. 2010) (an impairment that can be controlled by treatment or medication cannot be considered disabling). Similarly, the medical evidence reveals that Plaintiff's headaches were specifically linked to her hypertension and improved once she began consistently taking her blood pressure medication. Tr. 37, 221.

Plaintiff alleges she did not take her medication consistently due to cost. However, her blood pressure medications were on the $4.00 drug list. Tr. 248. Additionally, Plaintiff could afford to purchase alcohol and tobacco on a regular basis throughout much of the relevant time period. Tr. 222-223, 291, 407. On August 5, 2010, Plaintiff indicated that she drank a pint of whiskey and a 32-ounce beer and smoked half a pack of cigarettes daily. Tr. 307. Given this information, Plaintiff's argument is without merit. Furthermore, Plaintiff has not sought treatment at any free clinics or charitable organizations in the area, nor has she provided evidence that she was denied medical care due to her financial condition. *Murphy v. Sullivan*, 953 F.2d 383, 386-87 (8th Cir. 1992).

Finally, the undersigned notes that although the ALJ did not find Plaintiff's hypertension and headaches to be severe, he nevertheless took these impairments into consideration when determining Plaintiff's RFC. *See* 20 C.F.R. § 404.1545(a)(2) (ALJ will consider both severe and non-severe impairments in determining a claimant's residual functional capacity). For these reasons, the

undersigned finds that substantial evidence supports the ALJ's severity determination.

    B. <u>RFC Determination</u>

Plaintiff argues that the ALJ erred by adopting Dr. Kralik's assessment over Dr. Hice's Medical Source Statement. *See* Pl.'s Br. 16-20. At the fourth step of the evaluation, a disability claimant has the burden of establishing her RFC. *Eichelberger*, 390 F.3d at 591; *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). A claimant's RFC is the most she can do despite her limitations. 20 C.F.R. § 404.1545(a)(1). The ALJ determines a claimant's RFC based on "all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Masterson*, 363 F.3d at 737. The Eighth Circuit has stated that "a claimant's residual functional capacity is a medical question." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). Thus, although the ALJ bears the primary responsibility for determining a claimant's RFC, there must be "some medical evidence" to support the ALJ's determination. *Eichelberger*, 390 F.3d at 591; *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir 2000).

Substantial evidence supports the ALJ's RFC determination. On December 3, 2010, Plaintiff presented to Western Arkansas Counseling and Guidance Center ("WACGC") for counseling. Tr. 467-472. Rusti Hice, a licensed psychological examiner, noted that Plaintiff was intoxicated during her initial appointment. Tr. 470. Plaintiff was observed talking to other personalities and crying heavily. Tr. 470. Ms. Hice diagnosed Plaintiff with dissociative identity disorder, post-traumatic stress disorder ("PTSD"), alcohol dependence, physical and sexual abuse, rule out major depressive disorder, recurrent, moderate, and borderline features. Tr. 471. She estimated Plaintiff's Global Assessment of Functioning ("GAF") score at 35, indicating some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations,

judgment, thinking, or mood. Tr. 471.

On February 7, 2011, Plaintiff saw Kathleen M. Kralik, Ph.D., for a consultative mental evaluation. Tr. 453-460. At the time of evaluation, Plaintiff was attending court-ordered alcohol treatment at Gateway House. Tr. 455. Dr. Kralik diagnosed Plaintiff with alcohol dependence, (currently in court-mandated early remission, with extremely high risk of relapse, likely non-physiologically dependent), depressive disorder not otherwise specified (currently dysthymic at most), cannabis abuse, rule out dependence, and avoidant and parasitic-dependent personality features, at minimum (rule out narcissistic and antisocial traits). Tr. 459. Dr. Kralik noted that a diagnosis of "multiple personality disorder" was not appropriate, as Plaintiff appeared to have volitional control over her different roles, which is uncommon in dissociative identity disorder. Tr. 454. She also found that symptoms of a major depressive episode were not evident beyond dysthymia at most. Tr. 458. Dr. Kralik estimated Plaintiff's GAF score at 45 to 55.[1]

On February 11, 2011, Plaintiff returned to WACGC and reported that she had just been released from Gateway House following court-ordered residential treatment for alcohol abuse. Tr. 473. Ms. Hice noted that Plaintiff's mood was not as depressed and she had hope for a more positive future. Tr. 473. Ms. Hice diagnosed Plaintiff with major depressive disorder, recurrent, moderate, alcohol dependence, presently stable, dissociative identity disorder, and physical and sexual abuse. Tr. 473. On March 30, 2011, Ms. Hice completed a Medical Source Statement ("MSS"), in which she determined Plaintiff was markedly limited in twelve work-related categories, moderately limited in four work-related categories, and not significantly limited in three work-related categories. Tr.

---

[1] A GAF score of 41-50 is indicative of serious symptoms or any serious impairment in social, occupational, or school functioning. A GAF of 51-60 is indicative of moderate symptoms or moderate difficulty in social, occupational, or school functioning. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, 34 (4th ed., 2000).

463-465.

The ALJ did not err in adopting Dr. Kralik's findings over those of Ms. Hice. First, Ms. Hice is not an acceptable medical source, as she is not a licensed or certified psychologist or an individual performing the same function as a school psychologist in a school setting. 20 C.F.R. § 416.913(a)(2). Furthermore, Ms. Hice treated Plaintiff a total of two times, with Plaintiff being intoxicated during her initial appointment. Tr. 470. There is no lengthy treatment relationship present, and many of Ms. Hice's diagnoses were made while Plaintiff was under the influence of alcohol. As such, the undersigned finds that the ALJ did not err in affording little weight to Ms. Hice's MSS.

Dr. Kralik's evaluation is more thorough and consistent with the medical evidence. Dr. Kralik, a licensed psychologist, is an acceptable medical source. Moreover, Dr. Kralik made very detailed findings concerning Plaintiff's mental impairments and their impact on her ability to perform substantial gainful work. She found that Plaintiff's capacity to carry out activities of daily living, communicate in an intelligible and effective manner, and complete work-like tasks within an acceptable time frame was generally adequate for occupational purposes. Tr. 459-460. She further determined that Plaintiff's capacity to communicate and interact in a socially adequate manner was mildly impaired for occupational purposes and her capacity to cope with the typical mental/cognitive demands of basic work-like tasks, attend and sustain concentration on basic tasks, and persist in completing tasks was *at most* mildly to moderately *intermittently* impaired for occupational purposes. Tr. 459-460. Dr. Kralik concluded that nothing prevented Plaintiff from engaging in gainful occupational endeavors if she chose to do so or saw it as necessary. Tr. 458. After reviewing the evidence, the undersigned finds that the ALJ did not err in attaching significant weight to Dr. Kralik's opinion.

Additionally, Plaintiff argues that her GAF scores reflect an inability to perform substantial gainful activity. *See* Pl.'s Br. 18-19. GAF scores cover only a snapshot in time and are very subjective in nature. *See Jones v. Astrue*, 619 F.3d 963, 973 (8th Cir. 2010). The Commissioner has declined to endorse the GAF scale to evaluate disability claims because the scales do not have any direct correlation to the severity requirements in mental disorders listings. *Jones*, 619 F.3d at 974, nt. 4 (citing 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000)). Thus, while the GAF system provides insight into a claimant's overall level of functioning, it is by no means dispositive on the issue of disability and must be considered in conjunction with other medical evidence. Here, the ALJ considered the medical evidence of record, including Plaintiff's GAF scores, but determined she was capable of performing her past relevant work. Substantial evidence supports this determination.

C. Past Relevant Work

Finally, Plaintiff argues that the ALJ erred in finding she could return to her past relevant work as a poultry line worker. *See* Pl.'s Br. 9-14. At step four of the sequential evaluation, the ALJ must consider whether a claimant's impairments prohibit her from performing her past relevant work. *Jones v. Chater,* 86 F.3d 823, 826 (8th Cir. 1996) (citing 20 C.F.R. § 404.1520(e)). The ALJ will find that a claimant is not disabled if she retains the RFC to perform: (1) the actual functional demands and job duties of a past relevant job; or (2) the functional demands and job duties of the occupation as generally required by employers in the national economy. *Jones*, 86 F.3d at 826 (quoting Social Security Ruling ("S.S.R.") 82-61); *See Martin v. Sullivan,* 901 F.2d 650, 653 (8th Cir. 1990). The regulations provide that an ALJ may elicit testimony from a vocational expert in evaluating a claimant's ability to perform past relevant work. *Wagner v. Astrue,* 499 F.3d 842, 853-854 (8th Cir. 2007) (citing 20 C.F.R. § 404.1560(b)(2)).

A hypothetical question posed to the vocational expert is sufficient if it sets forth impairments supported by substantial evidence and accepted as true by the ALJ. *Goff v. Barnhart*, 421 F.3d 785, 794 (8th Cir. 2005) (citing *Hunt v. Massanari,* 250 F.3d 622, 625 (8th Cir. 2001)). The ALJ may properly exclude any alleged limitation or impairments he rejects as untrue or unsubstantiated. *Hunt v. Massanari*, 250 F.3d 622, 625 (8th Cir. 2001).

The vocational expert characterized Plaintiff's past relevant work as a poultry line worker, which is a light, unskilled job with an SVP of 2. Tr. 49. He further determined that, based on the ALJ's hypothetical and Plaintiff's own description of her prior work, Plaintiff could return to her past relevant work as actually performed and as generally performed in the national economy. Tr. 15, 25-26, 49-50. Here, the ALJ's hypothetical to the vocational expert was proper, as it mirrored the limitations ultimately adopted by the ALJ. *Roe v. Chater*, 92 F.3d 672, 676 (8th Cir. 1996). Additionally, the vocational expert's response provided substantial evidence to support the ALJ's finding that Plaintiff retained the RFC to perform her past relevant work as a poultry line worker. *See Roe v. Chater,* 92 F.3d 672, 675 (8th Cir. 1996) (testimony from a vocational expert based on a properly-phrased hypothetical question constitutes substantial evidence). Thus, the undersigned finds no error.

### V.     Conclusion

Having carefully reviewed the record, the undersigned finds that substantial evidence supports the ALJ's determinations at each step of the disability evaluation process, and thus the decision should be affirmed. Accordingly, Plaintiff's complaint should be dismissed with prejudice.

IT IS SO ORDERED this 10th day of December 2012.

                                                    /s/ J. Marschewski
                                                    HONORABLE JAMES R. MARSCHEWSKI
                                                    CHIEF UNITED STATES MAGISTRATE JUDGE